IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DARIN W. REED,

        Plaintiff,

        v.                         Case No. 13-4110-SAC

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.


MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the Commissioner of

Social Security which denied plaintiff disability insurance benefits and

supplemental security income payments. The matter has been fully briefed

by the parties.

**I. General Legal Standards**

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which

provides that "the findings of the Commissioner as to any fact, if supported

by substantial evidence, shall be conclusive." The court reviews the

Commissioner's decision to determine only whether the decision was

supported by substantial evidence in the record as a whole, and whether the

Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d

983, 984 (10th Cir. 1994). When supported by substantial evidence, the

Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). But the standard "does not allow a court to displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Trimmer v. Dep't of Labor*, 174 F.3d 1098, 1102 (10th Cir. 1999).

The claimant shall be determined to be under a disability only if he can establish that he has a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents him from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to perform his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U .S.C. § 423(d).

## II. Procedural History

Plaintiff, when 36 years old, alleged disability due to fatigue, depression, and anxiety. Tr. 68-70. At step one, the administrative law judge (ALJ) found that plaintiff had not engaged in substantial gainful activity since May 5, 2005, the alleged onset date. The ALJ found at step two that the plaintiff had the following severe impairments: valvular heart disease, mitral valve insufficiency, aortal valve insufficiency secondary to bacterial endocarditis, mechanical valve replacement, affective mood disorder, and anxiety disorder. Tr. 13. At step three, the ALJ found that Plaintiff's impairments did not meet or equal the severity of a listed impairment.

The ALJ determined plaintiff's residual functional capacity (RFC) as follows:

> ... the claimant has the residual functional capacity to perform less than the full range of sedentary work ... In particular, the claimant retains the ability to lift/carry 20 pounds occasionally and 10 pounds frequently, walk/stand for 2 hours out of an 8-hour workday, and sit for 6 hours out of an 8-hour workday. The claimant is limited to occupations that do not require the climbing of ladders, ropes, or scaffolds and which require only occasional climbing of stairs. The claimant is also limited to occupations that call for only occasional stooping, crouching, kneeling, or crawling. In addition, the claimant must avoid prolonged exposure to temperature extremes, chemicals, dust, fumes, noxious odors, humidity, and wetness. Finally, secondary to the claimant' mental disorders, the claimant is limited to occupations that do not demand attention to details or complicated job tasks/instructions.

Tr. 16.

At step four, the ALJ found the plaintiff unable to perform his past relevant work, but found at step five that Plaintiff could perform other sedentary, unskilled jobs that exist in significant numbers in the national economy such as credit checker, document preparer, and printed circuit board assembler. The ALJ thus determined Plaintiff is not disabled.

## III. Issues

Plaintiff contends that the ALJ made errors of law and that his decision is not supported by substantial evidence.

### A. Credibility

The ALJ found Plaintiff's complaints of disability not fully credible. When analyzing a claimant's subjective complaints, the ALJ may consider factors such as the extensiveness of a claimant's attempts to obtain relief, the consistency of non-medical testimony with objective medical evidence, and subjective measures of credibility that are peculiarly within the judgment of the ALJ. *See* 20 C.F.R. §§ 404.1529, 416.929; *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (citing *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988)).

### Improvement with Treatment

The ALJ acknowledged that Plaintiff had experienced heart problems since 2006, but found that surgery had improved Plaintiff's symptoms. Tr. 17-20. Impairments that can be controlled by treatment, medication, or surgery are not disabling. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir.

1995). Plaintiff had a mitral valve replacement in May of 2006, after which he "improved a great deal" and reported feeling better than he had in a long time. Tr. 17, 432-37, 515. Plaintiff had an aortic valve replacement in July of 2008, after which he recovered well and showed no significant abnormalities in either prosthesis. Tr. 18, 884-91, 931, 934-35. In November of 2010, his heart tones were noted to be "crisp and unremarkable and quite regular." Tr. 18, 1090. The record supports the ALJ's finding that the surgeries significantly improved Plaintiff's heart condition. This warrants the ALJ's giving less credibility to Plaintiff's post-surgery disabling complaints.

**ADL's**

Plaintiff contends that the ALJ erred in finding no limitations in his activities of daily living (ADLs). The ALJ found:

> As noted, the claimant has no limitations in terms of ability to perform various activities of daily living. The record indicates that the claimant is generally able to cook simple meals, go grocery shopping, handle his personal finances, sweep floors, dust, do some laundry, and mow his small yard. Additionally, the claimant testified that he often does 'little things around the house.' Indeed, following the claimant's 2006 valve replacement, claimant informed his treatment providers that he was busy making repairs on his new home. During an August 2007 examination at Valeo, the treatment provider recorded that the claimant appeared anxious to leave to go home and perform work that had become available to him (Exhibit 20F, p. 37). Overall, the claimant has described daily activities that are not limited to the extent one would expect, given the claimant's allegations of disabling symptoms and limitations.

Tr. 20. The nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations. *Thompson v. Sullivan,* 987 F.2d 1482, 1489 (10th Cir. 1993).

Plaintiff properly notes that sporadic performance does not establish that a person is capable of engaging in substantial gainful activity. But the ALJ's findings related to the issue of Plaintiff's credibility rather than to his ability to work. Plaintiff points to his ADL questionnaire, Tr. 329–333, as showing the lack of substantial evidence to support the ALJ's findings, but that questionnaire is the very evidence that the ALJ examined and found not fully credible.

That credibility finding is supported by substantial evidence. Nurse Practitioner Bachelor specifically noted that Plaintiff had a "very active life," which involved "moving into a new house and making home repairs." Tr. 20, 513. Plaintiff reported occasional mild fatigue, but denied shortness of breath, dizzy spells, or chest discomfort. Tr. 513. Plaintiff reported exercising more in August 2010, Tr. 1071, 1085, and at the hearing in May 2011, he testified that he tried to keep himself busy with "little things around the house," including sweeping, dusting, laundry, and mowing his small yard with a riding mower. Tr. 20, 63-64. Thus the ALJ was warranted in finding that Plaintiff was not as limited as he had alleged. *See White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001).

**Work History**

The ALJ found that Plaintiff's earnings record showed "a poor work history even prior to his alleged onset of disability date," ... "illustrat[ing] that the claimant has a lack of motivation to work, which has a negative

effect on his credibility." Tr. 20. In the ten years before his alleged onset of disability, Plaintiff earned little more than $5,000 in 1999 and 2004, earned less than $2,000 in 1995, 1996, 1998, and 2002, and earned no income at all in 2000 and 2003. Tr. 257.

To challenge this finding, Plaintiff points solely to an August 2007 note by a Valeo treatment provider that Plaintiff appeared anxious to leave to go home and work. Exh. 20F, p. 37. But this is a vague and ambiguous reference which provides only one person's impression of the Plaintiff on one day. Read in context, the reference could be to Plaintiff's motivation to go home and work on his own house, which does not equate to motivation to engage in gainful employment outside the home. In contrast, the record on which the ALJ relied shows an objective picture of Plaintiff's work over a period of more than five years, and is properly considered as one of several factors bearing on a claimant's credibility. *See Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995); *Perry v. Astrue*, No. 10-1006-SAC, 2010 WL 5392274, at *9 (D. Kan. Dec. 21, 2010) (unpublished) (citing *Yeates v. Barnhart*, 187 F. Supp. 2d 1318, 1333 (D. Kan. 2002)). The ALJ's reliance on Plaintiff's poor work history reasonably suggested that Plaintiff lacked motivation to work, somewhat diminishing the credibility of his disabling complaints.

**Mental Impairments**

The ALJ found Plaintiff's psychological symptoms to be largely "situational, related to family difficulties and his physical health problems." Tr. 19. The ALJ specifically noted the following, which are supported by the record: 1) Plaintiff reported in March 2010 that his mood improved significantly because he was no longer in a relationship; 2) Plaintiff indicated at the hearing that his anxiety largely stemmed from worrying about his heart problems; 3) Plaintiff told Dr. Barnett that he felt he could not work because of physical symptoms, not because of mental limitations; and 4) treatment providers discussed Plaintiff's mental symptoms in the context of family issues and physical health problems. The ALJ properly considered the degree to which Plaintiff's mental impairments were related to situational stressors. *See Lopez v. Barnhart*, 78 F. App'x 675, 678, (10th Cir. 2003) (unpublished); *Whitney v. Barnhart*, 60 F. App'x 266, 269 (10th Cir. 2003) (unpublished).

**Inconsistent Compliance**

In finding Plaintiff's statements about his disability not fully credible, the ALJ relied in part on Plaintiff's inconsistent compliance with prescribed medication and treatment, stating:

> The record also reflects that the claimant has a tendency toward noncompliance with directed treatment. Treatment providers at Valeo have also stated that the claimant frequently does not take his medications as directed. Notably, following the claimant's 2007 episode of endocarditis, the claimant failed to complete his penicillin regimen as directed and his compliance with treatment was described

as "erratic" (Exhibit 18F, pp. 2, 3). The claimant has consistently failed to show up for scheduled appointments at Valeo. The claimant has also failed to show up for cardiac consultations. (Exhibit 27F, pp. 2).

Tr. 20.

Plaintiff does not dispute that he failed to show up for some appointments, see Tr. 19-20, 602-04, 615, 618, 622-23, 635, 640, 645-46, 667, 683, 685, 688, 759, 1103, and sometimes failed to take his medications as directed, see Tr. 19, 536-37, 552, 604, 616, 624-25, 627, 636, 656, 997, 999-1000, 1056-57, 1063, 1075-76, 1090, 1097. Instead, Plaintiff points to documents which characterize his attendance as "regular," Tr. 646, and shows that on some dates he missed appointments due to a tooth problem, car trouble, or forgetfulness, see Tr. 602, 642 (stating Plaintiff was "unwilling to attend therapy at this time as he has in the past forgotten. He continues to be highly distractible."). Plaintiff also alleges the ALJ "failed to show his deviation was intentional," but Plaintiff cites no law imposing that duty on an ALJ.

**Smoking**

The ALJ also considered Plaintiff's noncompliance in continuing to smoke cigarettes despite his doctor's directions on several occasions to stop. Tr. 20, 560. Plaintiff argues that his smoking was "minimalistic in nature."

The record shows that in April of 2006, Plaintiff was counseled regarding smoking cessation and was given a nicotine patch. Tr. 402, 403. In October of 2006, Plaintiff was smoking two to three cigarettes a day. Tr.

513. In February of 2008, Plaintiff smoked a half a pack of cigarettes per day. Tr. 562, 971, 999. By April of 2008, Plaintiff had decreased his smoking and in March of 2009, was smoking intermittently and had used only one pack of cigarettes in the five previous months. Plaintiff testified at the hearing on May 3, 2011, that he had not smoked in the last five years except when he cheated due to increased stress. Tr. 63. So how often Plaintiff smoked in 2011 is anyone's guess. But the record fully supports the ALJ's finding that Plaintiff continued to smoke cigarettes despite his doctor's repeated directions to stop.

Plaintiff next contends the ALJ had a duty to show that had Plaintiff stopped smoking, he would have been able to work. *See* 20 C.F.R. 404.1530; *Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985). But that showing is not necessary where, as here, the ALJ considers non-compliance in determining the veracity of plaintiff's contention that his disability was so severe as to be disabling, rather than in denying benefits on the ground Plaintiff failed to follow prescribed treatment. *See Allen v. Apfel*, 216 F.3d 1086 at *3 (Table) (10th Cir. 2000) (so stating, distinguishing *Teter*).

Plaintiff generally contends that the ALJ must apply the *Frey* test in assessing credibility before the ALJ may rely on claimant's refusal to comply with treatment. The Court disagrees. *See Roggi v. Colvin*, 2013 WL 5304084, 6-7 (D.Kan. 2013) (finding no error in ALJ's failure to discuss *Frey*

test where noncompliance was merely part of a credibility assessment);

*Turner v. Colvin*, No. 12-2210-KHV, 2013 WL 5466677, at *12 (D. Kan.

Sept. 30, 2013) (same). As the Tenth Circuit has recently clarified:

> Holbrook contends the ALJ could not consider his failure to follow
> prescribed treatment, absent findings that the treatment would have
> restored his ability to work and was unjustifiably refused, citing *Frey v.*
> *Bowen,* 816 F.2d 508, 517 (10th Cir.1987). But, as we explained in
> *Qualls v. Apfel,* 206 F.3d 1368 (10th Cir.2000), the *Frey* requirements
> apply when such noncompliance is cited as a stand-alone basis for
> denying benefits under 20 C.F.R. §§ 404.1530 and 416.930, not when
> it is merely part of a credibility assessment. *Qualls,* 206 F.3d at 1372.

*Holbrook v. Colvin,* 521 Fed.Appx. 658, 663, 2013 WL 1150298, 4 (10th Cir.

2013).

### Inability to Pay

Plaintiff next suggests that he may have failed to comply with

treatment because he could not afford it or because of forgetfulness caused

by his mental impairments, and that the ALJ failed to develop the record on

these matters. "Inability to pay may provide a justification for a claimant's

failure to seek treatment." *Threet v. Barnhart*, 353 F.3d 1185, 1190 n. 7

(10th Cir. 2003). But the ALJ may reasonably rely on counsel to identify the

substantial issues requiring further development, and Plaintiff fails to show

that he squarely raised to the ALJ either forgetfulness or inaffordability as a

substantial justification for his noncompliance.

"Social Security proceedings are inquisitorial rather than adversarial. It

is the ALJ's duty to investigate the facts and develop the arguments both for

and against granting benefits, see *Richardson v. Perales,* 402 U.S. 389, 400–

401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)." *Sims v. Apfel,* 530 U.S. 103, 111, 120 S.Ct. 2080 (2000). Although the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues, that duty is at its zenith where a claimant is unrepresented. *Heckler v. Campbell*, 461 U.S. 458, 471, 103 S.Ct. 1952 (1983). Where, as here, a claimant is represented, counsel has the duty to raise the issue and the issue must be substantial on its face.

> Although an ALJ has a duty to develop the record even where, as here, a claimant is represented by an attorney, "[s]everal preconditions inform" that duty. *Wall,* 561 F.3d at 1062–63. "Under normal circumstances, the ALJ may reasonably rely on counsel to identify the issue or issues requiring further development. Moreover, a claimant need not only raise the issue [he] seeks to develop, but that issue must also be substantial on its face." *Id.* at 1063 (citation and internal quotation marks omitted).

*Shockley v. Colvin,* 564 Fed.Appx. 935, 939 (10th Cir. 2014) (rejecting claim that the ALJ failed in his duty to develop the record). *See Jones v. Colvin,* 514 Fed.Appx. 813 at 11 (10th Cir. 2013) (same); *Wall v. Astrue*, 561 F.3d 1048 (10th Cir. 2009).

The ALJ has a duty "to ensure that an adequate record is developed during the disability hearing *consistent with the issues raised*." *Flaherty v. Astrue,* 515 F.3d 1067, 1071 (19th Cir. 2007) (emphasis added) (affirming ALJ where claimant did not testify during the hearing that a lack of finances was the reason she did not receive treatment, and the record showed she had health insurance during at least part of the relevant period); *Henrie v. U.S. Dep't of Health & Human Servs.,* 13 F.3d 359, 360–61 (10th Cir. 1993)

(recognizing the ALJ's duty "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised ").

Here, very little testimony touches on the issues of affordability or forgetfulness in relation to Plaintiff's noncompliance. When questioned by his attorney, Plaintiff testified that his cardiologist, Dr. Meyer, and his nurse, Angela Bachelor, "still have let me have appointments even though the insurance and Medicaid – medical card wasn't available any longer for me." Tr. 66. Plaintiff testified that he had his medical card at the time Dr. Meyer noted that he didn't have any health insurance, but that his medical card expired a year and a half or so before the hearing. *Id.* At the time of that May 2009 hearing, Plaintiff had no health insurance, but his parents had been helping him pay for his medications and he had applied to the free clinic in Topeka and was trying to get in there. Tr. 67.

When asked about "a gap" in his treatment at Valeo, Plaintiff responded:

> There was a time when my doctor – I was getting prescribed – when I ran out of medical insurance and medical card, there was a small gap in there where I'd gotten to where I'd applied for help from the drug companies so where they're able to send me a coupon card now and it took over a month for each one before I could get those, but I got it to where they can help me pay for some of my medicine. It's like $300 a month for my ADD medicine.

Tr. 68. Plaintiff thus did not contend to the ALJ that his non-compliance with advised treatment or prescribed medications was due to his lack of funds, except for a "small gap" in time at Valeo, and Plaintiff never asserted that

his non-compliance was due to any mental impairment. This Court does not consider making a passing reference to facts on which an issue can be built, without expressly requesting the ALJ to further develop the issue, sufficient to meet counsel's duty to identify a substantial issue requiring further development. *See Shockley*, at 940.

Alternatively, in the event these justifications for noncompliance were in fact sufficiently raised to the ALJ, substantial evidence summarized above supports the ALJ's tacit finding that Plaintiff's lack of compliance was not generally attributable to his inability to afford medications or to his mental impairment. Further, Plaintiff offered other reasons for his infrequent or irregular medical visits or failure to seek medical treatment. *See e.g.*, Tr. 568 (Plaintiff reported in February 2008 that he did not take prescribed intravenous antibiotics one weekend because he was staying at a girlfriend's house); Tr. 616-17 (Plaintiff reported that a short stay in jail caused him to miss taking the prescribed antibiotics); Tr. 1062 (In March of 2010, Plaintiff reported that he did not take an increased dose of a prescribed mental health medication because he did not think he needed it); Tr. 1092 (O. Warren Meyer, M. D. noted in November of 2010 that although Plaintiff struggled with affordability issues he nonetheless took several medications, including mental health medication, an anticoagulant, and blood pressure medication); Tr. 66-68, 1053, 1056 (Plaintiff testified he no longer had a medical card, but that was not always the case during the relevant period);

14

and Tr. 1053, 1056 (Plaintiff's therapist discussed free medication through patient assistance programs in July 2009, and by January 2010 Plaintiff said he had "Health Access," which he thought might cover his medications.) No error has thus been shown in this or the other factors the ALJ relied upon in finding Plaintiff not fully credible.

### B. Opinion Evidence

Plaintiff contends, among other matters, that the ALJ rejected medical opinions on the basis of his own lay opinion instead of on the basis of contradictory medical evidence. The ALJ's duties include evaluating all medical opinions in the record, assigning weight to each opinion, and discussing the weight given to each. *See* 20 C.F.R. §§ 416.927(c), 416.927(e)(2)(ii); *Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012).

### a. Physical Limitations

### Dr. Gaeta

The ALJ gave significant weight to the opinion of independent medical expert Joseph Gaeta, M.D. Tr. 21-22, 1106-16. In April 2011, Dr. Gaeta reviewed the record and opined that Plaintiff could, during an 8-hour workday, lift up to 50 pounds occasionally and 20 pounds frequently, sit for 8 hours, stand for 6 hours, and walk for 2 hours. Tr. 1111-12. Dr. Gaeta concluded that Plaintiff would have been unable to work for about three

months following each of his two surgeries, but that he would be "OK" thereafter. Tr. 1106.

Plaintiff suggests that the ALJ should have given Dr. Gaeta's opinion less weight because he did not examine the Plaintiff. But an ALJ may properly afford great weight to a non-examining source. *See Kizer ex rel. Kizer v. Barnhart*, No. 04-1394-JTM, 2006 WL 681115, at *4 (D. Kan. Mar. 14, 2006) (unpublished) (upholding the ALJ's giving of substantial weight to the opinion of a state agency reviewing psychologist). In appropriate circumstances, an opinion from a non-examining consultant may be entitled to greater weight than the opinions of treating or examining sources. SSR 96-6p.

Plaintiff also argues the ALJ failed to comply with Social Security Ruling 96-5p and various regulations when weighing Dr. Gaeta's reviewing opinion. Specifically, Plaintiff contends that despite the ALJ's statement that Dr. Gaeta's "opinions are consistent with the objective evidence," the ALJ did not connect the dots by identifying that objective evidence. The Court disagrees.

Here, the ALJ found "[t]he claimant's allegations are not supported by the objective evidence," then summarized the "objective evidence" he considered, including Plaintiff's admitted activity level, his echocardiograms, and other tests and observations by medical and mental health professionals after Plaintiff's surgeries. Tr. 19-20. When the ALJ subsequently found Dr. Gaeta's opinions "consistent with the objective evidence," he had no need to

restate the objective evidence which he had already identified and summarized. Tr. 21-22.

Where a court is unable to follow the analysis by which the ALJ reached his conclusions, such as where all of the analysis is only in the ALJ's mind, the ALJ fails to connect the dots. In such a case, the court must remand for the Commissioner to explain how the assessment was made. *Mosher v. Astrue,* 479 F.Supp.2d 1196, 1205 (D.Kan. 2007) ("the ALJ 'did not connect the dots, so to speak,' between the evidence he summarized and the conclusion he reached.") (quoting *Kency v. Barnhart,* No. 03–1190–MLB, slip op. at 7 (D.Kan. Nov.16, 2004)). But where, as here, the ALJ discusses the evidence and relates it to his conclusions, clarifying the weight he gave to the medical opinions and the reasons for that weight, no more is required. *See Holley v. Colvin*, 2014 WL 172183, 8 (D.Kan. 2014), citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ gave even greater weight to Plaintiff's subjective complaints than did Dr. Gaeta by limiting Plaintiff in his ability to stand, lift, stoop, crouch, kneel, crawl, and climb to a greater extent than did Dr. Gaeta. Tr. 16, 22, 1111-14, 1116. The ALJ's decision shows that he properly weighed Dr. Gaeta's opinion in formulating Plaintiff's RFC.

### Treating Physician Meyer and Nurse Practitioner Bachelor

Plaintiff also contends that the ALJ erred in not giving controlling weight to the opinions of Dr. Meyer, Plaintiff's treating cardiologist, and his

Nurse Practitioner, Angela Bachelor. The ALJ gave "little weight" to their opinions that Petitioner could stand/walk for less than two hours out of an eight-hour workday; sit for two hours out of an eight-hour workday; needs to take unscheduled breaks; needs to elevate his legs for 25% of the day; and would miss more than four days of work per month because of his impairments. Tr. 21.

The ALJ found Dr. Meyer and Nurse Practitioner Bachelor's opinions were not supported by their own treatment records, stating:

> The record contains a "Cardiac Residual Functional Capacity Questionnaire" that was submitted by Dr. Meyer and Ms. Bachelor in May 2009 (Exhibit 40F.) The opinions reflected in Exhibit 40F were reaffirmed in a January 2011 letter to the claimant's attorney (Exhibit 48F). Dr. Meyer and Ms. Bachelor opined that the claimant can stand/walk for less than 2 hours out of an 8-hour workday and can sit for 2 hours of an 8-hour work day. They also opined that the claimant would need to take unscheduled breaks, would need to elevate his legs for 25% of the day, and would miss more than 4 days of work per month because of his impairments (Exhibit 40F, pp. 4, 6). The undersigned gives little weight to these opinions. These opinions are not supported by Dr. Meyer's or Ms. Bachelor's own treatment records. For instance, subsequent to the claimant's 2006 surgery, Ms. Bachelor noted that the claimant was "very active," which is clearly inconsistent with the significant limitations set out by her in Exhibit 40F. Also, as discussed, Dr. Meyer found that the claimant was doing well from a cardiac standpoint following his July 2008 procedure. Dr. Meyer concluded that the claimant's echocardiogram showed that the claimant's prosthetic valves were functioning well. Moreover, in his November 2010 letter, Dr. Meyer stated that the claimant's heart tones were unremarkable and regular. Dr. Meyer also noted that the claimant exhibited noncompliance toward treatment. However, the effect of the claimant's noncompliance is not discussed in Dr. Meyer's and Ms. Bachelor's report. Consequently, the undersigned gives little weight to these opinions.

Tr. 21. The ALJ thus provided specific, legitimate reasons supported by the record for the weight he gave to the opinions of the treating providers. *See Oldham v. Asture,* 509 F.3d 1254, 1258 (10th Cir. 2007) (finding ALJ need not discuss all the § 404.1527 factors and it is sufficient that the ALJ's decision be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

A "treating physician's opinion is given particular weight because of his unique perspective to the medical evidence." *Doyal v. Barnhart,* 331 F.3d 758, 762 (10th Cir. 2003). But a treating source's opinion is not entitled to controlling weight " 'if it is not well-supported by medically acceptable clinical and laboratory techniques or if it is inconsistent with the other substantial evidence in the case record.' " *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96–2p, 1996 WL 374188, at *2). So an ALJ may discount a treating source's opinion if he provides specific, legitimate reasons for doing so, as here. *See Williamson v. Barnhart*, 350 F.3d 1097, 1099 (10th Cir. 2003); SSR 96-2p.

### b. Mental Limitations

### Syed Mohiuddin, M.D.

Dr. Mohiuddin opined that Plaintiff had moderate major depression and some impairment in social, familial, and work functioning. Tr. 794, 796.

Plaintiff suggests that Dr. Mohiuddin was a treating physician whose opinion the ALJ improperly rejected. Dk. 13, p. 43.

Dr. Mohiuddin, a psychiatrist, examined Plaintiff only once for a mental health evaluation, Tr. 695-96, 790-96, in April 2009 at the request of his probation officer. Tr. 790-96. He diagnosed Plaintiff with depression and checked a box on a form indicating that Plaintiff had impairment in social, familial, and work functioning. Tr. 794, 796. The ALJ considered Dr. Mohiuddin's opinion and assigned it little weight, and thus did not reject it outright. Tr. 21.

The ALJ properly found that Dr. Mohiuddin was not a treating source since he had no ongoing treatment relationship with the Plaintiff and could give no "longitudinal picture" of his impairments. *See* 20 CFR §§ 404.1527(c)(2); 416.927(c)(2).

But even if Dr. Mohiuddin could be considered a treating psychiatrist in this case, the ALJ properly gave little weight to his opinion because it was unsupported by Plaintiff's mental health treatment records. Tr. 21. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4); SSR 96-2p. He stated:

> The undersigned considered, but gives little weight to Dr. Mohiuddin's opinion. Dr. Mouhiddan indicated that the claimant has recurrent major depression, but the claimant's GAF scores as reflected in the Valeo records are always in the mid to upper 50's, which suggests only a moderate level of impairment. In addition, Dr. Mohiuddin's opinion that the claimant has impairments in social, familial, and work functioning is broad and vague and he does not specify what the limitations are. Dr. Mohiuddin's opinions are not supported by the mental health treatment records. As noted, treatment providers have linked the claimant's psychological symptoms to situational issues such

> as family and health problems. In addition, the claimant has been
> consistently noncompliant with mental health treatment, which is not
> reflected in Dr. Mohiuddin's report. While Dr. Mohiuddin diagnosed the
> claimant with major depression and the record indicates that the
> claimant has intentionally overdosed on medications, the treatment
> records from Valeo repeatedly describe the claimant's condition as
> mood disorder rather than as major depression. In addition, Dr.
> Barnett rendered a diagnosis of anxiety disorder, but did not diagnose
> the claimant with depression.

Tr. 21. The ALJ thus gave specific, legitimate reasons for the weight he gave to Dr. Mohiuddin's opinion.

Plaintiff contends that the ALJ became his own medical expert in finding Plaintiff suffered from a mood disorder rather than from major depression. But the ALJ's decision makes clear that he relied on "treatment records from Valeo" that "repeatedly describe the claimant's condition as mood disorder rather than as major depression." Tr. 21. Plaintiff challenges that conclusion by showing that he was taking Wellbutrin for depression over a lengthy period of time, Tr. 72, 536, 537, 558-59, 997-98, 1051, 1057, 1059, 1075 1100, and that he reported depression to treating sources who diagnosed Plaintiff with depression, Tr. 522, 527, 528, 630-31, 681, 774, 775, 777, 790, 802, 1051, 1055, 1057, 1060, 1063, 1066, 1069, 1072. But the ALJ properly found Plaintiff's psychological symptoms linked to situational issues, such as family and physical health problems, Tr. 19-21, 70, 1062, and found that his GAF scores indicated only moderate symptoms. Tr. 18, 21, 602, 604, 606, 608, 670, 674, 687, 691, 777, 795, 1052, 1055, 1061, 1064, 1070, 1073, 1077, 1078, 1081, 1084.

The ALJ further considered that Dr. Mohiuddin's opinion was broad and vague and did not detail any functional limitations. Tr. 21, 790-96. In order to prove disability, the evidence must establish functional limitations, not just medical diagnoses. *See* 20 C.F.R. §§ 404.1545(e), 416.945(e). Plaintiff contends that a vague opinion from a medical source triggers an ALJ's duty to recontact the source. *See* Pl.'s Br. at 42-43. But the law Plaintiff cites imposes no duty on the ALJ to clarify a vague opinion. *See* 20 C.F.R. § 404.1512(e)(1). Rather, where a medical opinion is inconsistent, ALJs will "weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have." 20 C.F.R. §§ 404.1520b(b). Here, the evidence contained sufficient evidence to support a determination of Plaintiff's mental RFC.

### Dr. Barnett

Robert Barnett, Ph.D. conducted a consultative psychological examination of the Plaintiff in October 2010, examining him only once. Tr. 19, 1011-17. He concluded that Plaintiff showed some concentration problems, but appeared cognitively capable of simple repetitive work tasks as well as some complex tasks. Tr. 19, 1017. The ALJ gave Dr. Barnett's opinion significant weight and incorporated his findings into the RFC by limiting Plaintiff to jobs that did not require complicated job tasks or attention to details. Tr. 16, 19.

The ALJ considered that Dr. Barnett based his opinion on an examination that included several psychological tests. Tr. 19, 1015-17. Plaintiff contends that psychological tests are not required, and that is true, but the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight an ALJ will give that opinion. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Dr. Barnett's tests indicated that Plaintiff tended to magnify complaints and overstate his symptoms. Tr. 1016. Dr. Barnett also observed that Plaintiff displayed low average intelligence and logical and coherent thought processes. Tr. 1015-16. The ALJ found Dr. Barnett's opinion consistent with the record as a whole. Tr. 19. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Particularly, the ALJ found Dr. Barnett's opinion consistent with the situational nature of Plaintiff's psychological complaints. Tr. 19. When Dr. Barnett asked Plaintiff what kept him from working, Plaintiff did not mention psychological symptoms, but focused instead on physical complaints. Tr. 19, 1017. The ALJ did not err in giving his opinion significant weight. Tr. 19.

Plaintiff suggests that Dr. Mohiuddin was more familiar with Plaintiff's mental functioning than Dr. Barnett was. *See* Pl.'s Br. at 44-45. Both saw Plaintiff only once. Tr. 790-96. Unlike Dr. Barnett, however, Dr. Mohiuddin did not explain his opinion or link it to any specific psychological testing. Tr.

790-96, 1012-17. No error has been shown in the ALJ's giving greater weight to the opinion of Dr. Barnett.

## Overlooking Plaintiff's Noncompliance

Lastly, as one factor in weighing the medical opinions, the ALJ considered that Dr. Mohiuddin's, Ms. Bachelor's, and Dr. Meyer's opinions failed to account for Plaintiff's noncompliance. Tr. 21. Plaintiff suggests that an ALJ may not rely on his own evaluation of the record when weighing a treating source opinion. *See* Pl.'s Br. at 43-44. But an ALJ may consider one's noncompliance without needing to be a medical expert. *Cf. Sanders v. Astrue*, No. 07-4085-RDR, 2008 WL 5427681, at *7 (D. Kan. Dec. 29, 2008) (affirming an ALJ's decision where the ALJ considered the claimant's infrequent medical treatment when weighing a treating physician's opinion). Here, the ALJ properly evaluated the medical opinions in the context of the record as a whole. *Cf. Lopez v. Barnhart*, 183 F. App'x 825, 828-29 (10th Cir. 2006) (unpublished) (distinguishing *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)). Plaintiff has established no error in the ALJ's evaluation of the medical opinions.

The evidence in this case presents two fairly conflicting views, but this court's standard prevents the Court from displacing the agency's choice between those views since the ALJ's findings are supported by substantial evidence and reflect correct application of the law.

24

**RFC**

Plaintiff contends that the ALJ's erroneous credibility findings and rejection of the credible opinions of Dr. Mohuiddin, Dr. Meyer, and Ms. Bachelor caused him to adopt an erroneous RFC. Dr. Meyer and Ms. Bachelor opined that Plaintiff would need to take rest breaks during the day, would need to change positions, would need to keep his feet elevated at times, and would miss several days of work each month due to his heart condition. Tr. 967, 969. But the ALJ rejected these limitations for the reasons stated above. The ALJ's RFC determination was supported by substantial evidence.

**Step Five**

At the hearing, a vocational expert (VE) testified that a hypothetical person with Plaintiff's vocational profile and RFC could perform sedentary work as a credit checker, a document preparer, and a printed circuit board assembler (Tr. 73-75). That RFC was supported by substantial evidence. The ALJ included all the restrictions in the RFC in his hypothetical question to the VE. Tr. 16, 74. Where, as here, a VE's answer to a hypothetical question includes all the limitations in the RFC, that answer provides a proper basis for an ALJ's decision. *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993)). Thus, the ALJ properly found that Plaintiff could perform other work existing in the national economy and was not disabled. Tr. 23-24.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 16th  day of September, 2014, at Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge